Good morning, Justices. John Kevin Crowley appearing on behalf of the appellant in this case. This case goes back to January 2008. It starts off with a very absurd misunderstanding between the health care provider and Jerry Foss, the husband. Jerry Foss has a problem. Behind a closed door, Jerry Foss explains that he's having a problem with his colostomy bag. He needs help. The health care provider interprets that as his intent. He wants to commit suicide but needs help to commit suicide. What does the health care provider do? She calls 911. She doesn't take any steps to confirm her understanding. She doesn't call my client, who's at class, and tell my client of what she suspects to be an intent to commit suicide. Let me ask you this, though, since you don't have a lot of time and we have to sort of jump, that we're really talking about what the officer had to deal with at that particular time. And so it's basically undisputed that the health care provider did call 911. And so the officers weren't there. You know, they didn't call 911. So from the officer's perspective, they're sent out on a 911 of a suicide call. So I think that's a fact that's basically undisputed. So I think you need to, you know, and since this is, you know, a summary judgment, you get, you know, we have the undisputed facts and then any that are disputed are in your favor. So what, you know, so from that standpoint, it's basically undisputed that a health care person called 911 at that residence and the officers are responding with that information, correct? Correct. So the fact whether that's absurd or not or anything along those lines, it doesn't change the fact that they went, they were told there's a 911 of a suicide at that house. Correct. And, but it does, it's relevant to the issue of what is in the mind of Jenna Hall when the police arrive. So the police arrive, properly knock on the door. She is not upset but doesn't really understand. Okay, so let me just say we know all the facts, okay? So let's, and we understand those. Here's my question. We do have a dispute of facts where the officer said, when he talked to her, she said, I'm of sound mind, you know, I'm going to kill myself. She says, he leans down and says, you know, call me if you ever need me. And she said, I'd rather kill myself than call you. So those are the opposing facts, correct? Yes. And that is the basis on which the 72-hour hold was initiated. That's correct. So, you know, I'm inclined to believe that there are disputed facts, but then the question I have is what's the legal significance of that? And I'd appreciate if you could address that in terms of the qualified immunity. Okay. To that point, up to that point where she makes the statement or there's a disputed statement, there is no probable cause to do anything but leave the house. Officer Mescala goes the extra effort and makes a statement to her. She takes it offensively and makes a conditional sarcastic reply. Now, in my 62 years, I have not mastered the language of feminine. But what she's saying to this officer is, you're done, get out of my house. Let me just ask you about that and a little question about the summary judgment standard and what we're looking at. The opposing counsel introduced a tape of what was stated on the stoop. And in listening to that tape, she more or less admits or she states, you know, I didn't use the swear word, but I did say I'm going to kill myself. How do we take that into account in considering whether there's a genuine issue of material fact? You can't bootstrap the probable cause by facts and circumstances after the arrest. She doesn't deny saying that. Well, why is that? Because the arrest seems to be continuing, and that's what you say in your brief, that it happens when he grabs her by the hand and takes her out and continues to restrain her. So it seems to be continuing, according to your allegations, and then there's this eight-man-on-the-stoop. The officer says in the house to his co-officer, Officer Hanneran, that he's taking her in on a 51-50. She's not free to leave. At the point they're in the house, I believe, there's sufficient evidence to show she's under arrest. Well, and the fact that – I tend to agree with you on that, because when the officer is testifying, he's asked that statement, that's the one in the house, is the sole basis, the sole factual basis for the 72-hour hold. Is that correct? Correct. So it seems to be that by the officer's own statement, his probable cause began and ended with the single statement. I agree. I think that is the record. I think that is what happened. So then the question is, did that give him probable cause for the arrest, which this is considered? Let's say that it didn't give probable cause. But then the question is, is he somehow protected because a reasonable officer would have believed under these circumstances? And we haven't quite had a psychiatric hold case that mimics this one. So what's the – we're back to what's the legal consequence of all this? The legal consequence is the jury has to decide. You have a he said, she said situation. Well, but no, that's not true when you get to the second prong of qualified immunity. If – and so from the standpoint, if let's say that as a legal consequence we say, okay, you didn't have probable cause, what is the clearly established law that you rely on that would have put the officer on notice that he didn't have probable cause? And I think what Judge McKeown is saying is give me a case. You know, if there's a – Well, I'm not saying give me a case necessarily. I'm saying what – because you don't need an exact case in order to escape immunity. I'm saying, though, what's your legal argument? You don't get immunity if it's unreasonable. It's unreasonable. Here's the situation. If you take the officer's statement of what she said, I'm of sound mind and I'm going to F and kill myself, why would the officer react the way he did? Why would he stand up, yell at her, and basically arrest her? Wouldn't he inquire about further things? Are you on medication? Have you attempted suicide in the past? He doesn't. So his – But assuming that the picture that we have of that incident, and I guess I'm still not sure why her statement later on the stoop doesn't shed light on what she said, but assuming – taking her version of the facts, is there a case that would say that the officer, reasonable officer, should have known that she was not – that 5150 was not applicable? I can't find a case in that regard. But the question is whether it's a reasonable reaction of the officer. But what about the fact that they are sent out there on a 911 by a totally independent person, so they're sent out on a suicide call? It's not a situation where the officer's initiated contact. They were – someone else initiated contact. So why isn't that a factor as well in the – It is a factor in this sense. It was completely ridiculous. They investigated it and found that the person who was allegedly going to commit suicide was fine. And then they're done. They should leave. Instead, they inquire of the wife. The wife has no history. They can't articulate one fact in the record or in her history that she was suicidal, that she was on medication, that she was aggressive, she was going to hurt herself or anybody else. It's outrageous. Do you want to save the remaining time for rebuttal? Yes. Yes, I would, Justice Alito. All right. Thank you. Good morning. I'm Greg Fox. I represent Officer Miskella and the city, which is sued only as its employer under the State law claims. So I've heard the discussion, and I think it's important for the record we understand that this was not an arrest. This was a detention under Welfare and Institutions Code 5150. It's just tantamount to arrest according to the article. Probable cause is required to make a detention under Welfare and Institutions Code. But this is a non-criminal statute. And an important issue here for the court, which I think the court has recognized in its prior cases, is that our law enforcement officers are increasingly being called upon to perform two distinct services. One, enforce the criminal justice laws. And two, as first responders, they're being called upon to evaluate and help people who may be in emotional distress. Why is that important? It's important for several reasons, one of which is the officers are not trained as psychologists or psychiatrists. They have an obligation and a duty to provide that level of service required by the facts as they find them at the time. Now, Justice, you said I think that's a matter. I mean, the fact of the matter is they are authorized to detain people on a probable cause standard. That's right. Day in and day out, the officers implement the probable cause standard in a whole series. So the question is, on the basis of the single statement, which is what the officer said was his basis, is that legally probable cause? Yes, because you have to look at that single statement in the context which the Court has already addressed, which is why are they being called to the house? What do they observe when they enter the house? How do they act inside the house? Once they got there, they did determine the person about whom they had been called, that there had been a mistake or that there was no basis.  Correct. And so the question is, is there a limit to the number of statements that he was not a threat to himself or to other people? Well, are we limited to what the officer says is probable cause if he says it was that single statement, or are we limited to what the facts that are before us? Well, you're limited to the record that's before you in terms of what the officer said. Well, the single statement that she made is disputed. We have what she says she said, we have what the officer said she said, but then we have the conversation on the stoop which sheds some light on what that single statement was. Can we take into account the audio tape and the transcript of the conversation on the stoop about what that single statement was? Yes, and the reason we put that into the record is it provides context for what was said inside the house. Remember, you have to understand, what is the officer's understanding of this person's response to him? What did he offer? He offered a business card and an offer of help. He didn't touch her. He didn't say anything other than that. He said, if you need help in the future. That's a disputed fact. I mean, I. No, no, I'm taking. Do you want to wait? Yes, ma'am. I think we all, you know, in our head might have an idea of what happened there, but her testimony is that he came on to her, he leaned down with the card, and in her view, he came on to her, and that's why she said, I'd rather kill myself than talk to you, when he made the offer of what we view as an offer of help. We do have a disputed issue of fact. Now, it may not turn out to be legally significant. I agree with that. So, and then the question is why. But her subjective state of mind in terms of how she interpreted the officer's statement is not relevant. There's no dispute that she herself says, the officer, she says, knelt down, offered me a business card, and said, if you ever need help, call me. He made an offer of help. He's a uniformed law enforcement officer, understanding she's in a difficult situation in which the police were already called. Based upon that, the undisputed fact is she said, I would, might kill myself. Why is that important? Because in the case of Bias v. Moynihan, this Court held that when someone wrote a letter to a superior court judge and said, if I lose my case, I may kill myself, this Court held, if it is reasonable for a law enforcement officer to determine that a person summoned by their own statement might, not will, could or shall, might take their own life. For a human being to tell a uniformed police officer, in the context of this case, given an offer of help and a business card, I would rather kill myself than call for help, and the recording we submitted. Let's just take what she said. Yes. And what she said. We have to take that as in favor of her. She says, basically, I'd rather kill myself than talk with you. So if we take that statement. Right. I take it your view is that falls squarely in the bias, the case of Bias. Yes. In terms of that kind of an officer's reaction. Because she's not saying, I'm going to kill myself right now. She's saying, under my life situation, I would rather kill myself than, in effect, call the police for help. That's what she says. And she admits that's what she says. I think the importance of the tape out on the stoop is that she does not deny, she told the officer, I would rather kill myself than call for help. So is what's disputed what was meant by that statement as opposed to what the statement was?  Yes. So do we need to, is that, I guess, if the actual statement is not disputed. Right. But what was meant by the statement, she takes it, she's thinking he's coming on. His position is it was an offer of help in light of everything else. So do we need to resolve what their subjective statements were to decide whether there was probable cause? Or is that material to the determination of probable cause? No, because if the subjective state of mind of the parties is material to what is to be determined, any person could say later, I was thinking this when I said this. And the courts have clearly held this has to be evaluated on an objective analysis. The subjective state of mind of the parties is not important. Otherwise, I'd say to you, well, my officer had the best intentions. And you'd say to me, well, his best intentions don't rule here. The rule is what was an objectively reasonable officer's reaction to what she said. And why I think qualified immunity is very important in the analysis is there is no case, and bias was decided the year before this incident took place. And I think the courts have recognized that law enforcement officers have a very difficult job trying to evaluate how to respond, especially when a person in front of them, in a law enforcement context, says, I might kill myself. Well, now, if they left and didn't do anything and she killed herself. Right. Then. I'd be here again on a different case in which there would be an argument that because he had communicated with her, he had formed a special relationship, he therefore had a duty of care. And that's exactly the fact. I don't really think that's – I mean, I understand the practical implications, but that's really not the basis on which we would evaluate probable cause at the time, is it? Well, there's also. I mean, yes or no. There's also. Do you evaluate probable cause at the time. Yes. Based on some hypothetical of what could happen down the road? You evaluate what the officer knew at the time, but you have to take into effect the context. So if they've been standing outside waiting for an ambulance to come for her husband and there was some light banter going on and he says, what do you think if the Giants win the World Series? And she goes, oh, my God, I'd kill myself. I'm a Cardinals fan. Well, that would be a justful reference to this term. The reason I think this is important within my limited time is Government Code 856, which is part of the argument and goes to the State court claims. This is a Government Code section which I have not seen addressed very often by either the Federal or the State courts, but we cited a case called Johnson, and I believe that Government Code provides an absolute immunity under California law for any California tort claims being brought by the plaintiff in this case. And there are California tort claims being brought in this case that are on appeal. That gets to my question. If we thought that there wasn't probable cause for the arrest, but that in any event he had qualified immunity. Yes. How does that affect the California claims, which seem to have the immunity statutes that you cite seem to come into place only if there's a lawful arrest or words to that effect? I agree with you that I think Welfare and Institutions Code 5278 requires probable cause, but my reading of the case law that we cited in Government Code 856 says the determination by the officer is entitled to absolute immunity. So is that the language in accordance with any applicable enactment? I'm looking at 856. Yes. So I cited Johnson v. County of Los Angeles, 143 Cal. F. 3rd, 298, a 1983 case. In that case, they specifically said, the California Supreme Court has expressly held that the scope of the immunity granted in Section 856, subdivision A1, extends not only to the final determination to confine or not to confine the person for mental illness, but to all determinations involved in the process of commitment. The exception is after he has detained someone for 5150. If there is a subsequent injury due to failure of due care or negligence, then there's no immunity for that. But I guess the thing is, if we found there was not probable cause, but it was not clearly established, and the officer's entitled to qualified immunity, doesn't that then don't then the State claim survive? No. Under Government Code 852, the – this is a false arrest case. And so the determination to take her into custody is absolutely immune under California law, as I read the statute and as I read Johnson, Tarasoff, and the other California cases that we cited in our brief. So what do we do with Section 5278? I mean, we have kind of multiple semi-immunity clauses in California. Right. Is it 856, 852? And we have 820. It would seem to take him out. Right. But then the 15278 is the one that says you have to have probable cause or, you know, in accordance with the law. So do you only need one? Well, the Government Code trumps the general civil code because the Government employees as opposed to other persons. And a police officer is certainly a Government employee. Okay. Unless the panel has further questions, thank you. Thank you very much. Do you have a short time for rebuttal left? Thank you, Justices. The pivotal question of fact is material. You have two versions of the statement. And it's material because that's where the line is drawn between good faith on the police officer and retaliation of the police officer. But I guess I'm still struggling with that since we ‑‑ it looks like it's what the statement meant. You know, what it meant to her, what it meant to the officer. If the standard is an objective one for probable cause, how then does their ‑‑ it's a little bit like the case to say if an officer pulls someone over for a taillight out and the officer, you know, then we had cases that said it doesn't matter that he really wants to search the inside of the car, the issue is the taillight out. And here the issue is the statement was made. So there's some subjective intents on that. How does that, you know, how does that become material in the determination of probable cause? Well, it's conditional. Because we know what the statement was. The difference is her statement is conditional and sarcastic. His statement of her is it's I'm going to kill myself. But what we have are the words. Those are decided by the jury. And the reason it's material is because it's the demarcation of whether the officer is justified in a limited immunity or having good faith or whether he's acting retaliatory and using 5150 to get back at her. That's the issue. It's material. It's significant. For instance, the officer said his help to her. What is he going to do? Go help her with the colostomy bag of her husband? What kind of help is he going to provide? She takes that as an insult. She, I believe it's material. She has a right to present that to the jury and the jury to decide what the officer's intent was. But what if someone says to an officer, you know, say that again and I'm going to go get my gun? And then what their defense later is, well, I don't have a gun and so the officer can't take that. It's undisputed that the person said I'm going to go get my gun. But then she knows she doesn't have a gun. The officer doesn't know whether she has a gun or not. You know, do we get into that? And she doesn't have a gun, as it turns out. They searched the whole place and she doesn't have a gun. So does the officer have to get into that? Or do we have to get into that? If someone says something incendiary, whether I'm going to kill myself, I have a gun, does it matter after that whether they really were going to kill themselves or they really have a gun or not? Or? The universe of possibilities are expansive. In this case, Sergeant Alexander says it. He says it's conditional. It's like somebody is going to die to fly a JetBlue again. I'd die if I had to fly JetBlue. That is not a present imminent threat of harm to yourself or harm to another, which is the standard. That's the standard the officer has to work under. I think we've got your argument well in mind and we've given you a couple of extra minutes here. So thank you very much. Thank you, counsel, both of you, for your argument this morning. The case of Hall v. Fremont is submitted.
judges: McKeown, Callahan, Ikuta